ACCEPTED
03-14-00629-CV
4796412
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/7/2015 4:25:40 PM
JEFFREY D. KYLE
CLERK

NO. 03-14-00629-CV

_____

IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
4/7/2015 4:25:40 PM
JEFFREY D. KYLE
Clerk

_____

LOS FRESNOS CONSOLIDATED INDEPENDENT SCHOOL DISTRICT and
MICHAEL L. WILLIAMS, THE STATE COMMISSIONER OF EDUCATION,
*Appellants*,

v.

JORGE VAZQUEZ,
*Appellee*.

_____

On Appeal from the 419th Judicial District Court of Travis County, Texas;
Cause No. D-1-GN-13-003654; before the Honorable Scott H. Jenkins

_____

## APPELLANT COMMISSIONER OF EDUCATION'S REPLY BRIEF

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for
Civil Litigation

DAVID A. TALBOT, JR.
Chief, Administrative Law
Division

JENNIFER L. HOPGOOD
State Bar No. 24073010
Assistant Attorney General
Administrative Law Division
OFFICE OF THE TEXAS ATTORNEY GENERAL
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4200
Facsimile: (512) 320-0167

*Attorneys for Appellant,*
*Michael L. Williams,*
*Commissioner of Education*

April 7, 2015

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................ii

INDEX OF AUTHORITIES.....................................................................................iv

SUMMARY OF THE ARGUMENT ........................................................................1

ARGUMENT ...........................................................................................................2

    I.      The Court should reverse the district court's ruling and affirm the Commissioner's Decision because Mr. Vazquez failed to prove that the Decision was not supported by substantial evidence, and the Board did not abuse its discretion in admitting the student statements during the term contract nonrenewal hearing. ......................................................2

        A.     Mr. Vazquez failed to overcome the presumption that the Commissioner's Decision was supported by substantial evidence.....2

        B.     The Court must look at the record as a whole....................................6

        C.     Because the student statements were properly admitted, the Board did not abuse its discretion when ruling to admit the evidence. ..........7

            1.     Texas courts have ruled that the liberal hearsay exception of section 2001.081 allows for admission of hearsay by an agency. 8

               a.     The Commissioner has never expressly disallowed the application of the section 2001.081 hearsay exception..........9

               b.     There is no abuse of discretion in admitting the statements under section 2001.081 or even a lesser standard. ...............11

               c.     Legislative history supports application of hearsay exception. ...................................................................................................12

            2.     The student statements met the "not reasonably susceptible to proof" standard...........................................................................15

            3.     As noted in the School District's Brief, the U.S. Supreme Court and the Fifth Circuit have held that hearsay evidence may be admitted and considered in federal administrative contested case hearings. ..............................................................................16

        D.     The hearsay statements, admitted under the section 2001.081 hearsay exception, satisfy the substantial evidence standard.........................17

            1.     Courts must look at the particular evidence to determine weight and credibility...........................................................................17

2.       Mr. Vazquez failed to put on his own contested case and rebuttal evidence.................................................................18

3.       Relatedly, Mr. Vazquez's due process violation claim lacks merit. ...............................................................................19

II.     The district court impermissibly directed the Commissioner how to correct an error identified by the district court.......................................20

PRAYER ...................................................................................................21

CERTIFICATE OF COMPLIANCE...........................................................23

CERTIFICATE OF SERVICE ...................................................................23

# INDEX OF AUTHORITIES

**Cases**

*Calhoun v. Bailar,*
  626 F.2d 145 (9th Cir. 1980), *cert. denied,*
  452 U.S. 906 S.Ct. 3033 L.Ed.2d 407 (1981) ......................................................16

*Christopher Columbus St. Mkt. v. Zoning Bd. of Adjustments of City of
  Galveston,*
  302 S.W.3d 408 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ....................12

*City of Brownsville v. Alvarado,*
  897 S.W.2d 750 (Tex. 1995) ................................................................................8

*Dodd v. Meno,*
  870 S.W.2d 4 (Tex. 1994) ..................................................................................15

*Emps.' Ret. Sys. of Tex. v. McKillip,*
  956 S.W.2d 795 (Tex. App.—Austin 1997, no pet.) ...........................................20

*Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer,*
  662 S.W.2d 953 (Tex. 1984) .................................................................................2

*Ford Motor Co. v. Butnaru,*
  157 S.W.3d 142 (Tex. App.—Austin 2005, no pet.) ...........................................20

*FTC v. Cement Inst.,*
  333 U.S. 683 (1948) ...........................................................................................16

*Gilder v. Meno,*
  926 S.W.2d 357 (Tex. App.—Austin 1996, writ denied) ...................................19

*Graff Chevrolet Co. v. Tex. Motor Vehicle Bd.,*
  60 S.W.3d 154 (Tex. App.—Austin 2001, pet. denied).......................................2

*Grounds v. Tolar Indep. Sch. Dist.,*
  856 S.W.2d 417 (Tex. 1993) .................................................................................3

*Grubbs Nissan Mid-Cities v. Nissan N. Am., Inc.*,
   No. 03-06-00357-CV, 2007 WL 1518115
   (Tex. App.—Austin May 23, 2007, pet. denied)......................................... 8, 9, 10

*Howell v. Tex. Workers' Compensation Comm'n*,
   143 S.W.3d 416 (Tex. App.—Austin 2004, no pet.) ..............................................7

*Judson Indep. Sch. Dist. v. Ruiz*,
   04-13-00706-CV, *2015 Tex. App. LEXIS 3055*
   (Tex. App.—San Antonio Mar. 31, 2015, no pet. hist.)......................................15

*Lewis v. Southmore Savings Ass'n*,
   480 S.W.2d 180 (Tex. 1972) ..................................................................... passim

*Owens–Corning Fiberglas Corp. v. Malone*,
   972 S.W.2d 35 (Tex. 1998) ...................................................................................8

*Pub. Util. Comm'n v. GTE-SW, Inc.*,
   833 S.W.2d 153 (Tex. App.—Austin 1992),
   *rev'd in part on other grounds*, 901 S.W.2d 401 (Tex. 1995) ............................20

*R.R. Comm'n v. Shell Oil Co.*,
   161 S.W.2d 1022 (Tex. 1942) ...............................................................................2

*Richardson v. Perales*,
   1971, 402 U.S. 389 (1971) .................................................................................16

*Sch. Bd. of Broward Co., Fla. v. Dep't of Health, Educ., & Welfare*,
   525 F.2d 900 (5th Cir. 1976)...............................................................................16

*Seifert v. Lingleville Indep. Sch. Dist.*,
   692 S.W.2d 461 (Tex. 1985) .................................................................................4

*Sierra v. Nelson*,
   No. 03-00-00161-CV, 2000 WL 1587652
   (Tex. App.—Austin Oct. 26, 2000, no pet.)........................................................15

*State v. Mid-South Pavers*,
   246 S.W.3d 711 (Tex. App.—Austin 2007, no pet.) .............................................5

*Stratton v. Austin Indep. Sch. Dist.*,
   8 S.W.3d 26 (Tex. App.—Austin 1999, no pet.)......................................................6

*Sunbeam Envtl. Servs. v. Tex. Workers' Comp. Ins. Facility*,
   71 S.W.3d 846 (Tex. App.—Austin 2002, no pet.)...................................................7

*Tex. Dep't of Pub. Safety v. Kimbrough*,
   106 S.W.3d 747 (Tex. App.—Fort Worth 2003, no pet.) .......................................12

*Tex. Natural Res. Conservation Comm'n v. Sierra Club*,
   70 S.W.3d 809 (Tex. 2002) ...................................................................................20

*Vitek v. Jones*,
   445 U.S. 480 (1980) ..............................................................................................19

*Woolsey v. Nat'l Transp. Safety Bd.*,
   993 F. 2d 516 (5th Cir. 1993)................................................................................16

**Statutes**

Tex. Educ. Code ch. 21, subchapter G.......................................................................15

Tex. Educ. Code § 21.204(e) ......................................................................................11

Tex. Educ. Code § 21.207...........................................................................................12

Tex. Educ. Code § 21.207(b) ......................................................................................13

Tex. Educ. Code § 21.207(c) ......................................................................................14

Tex. Educ. Code § 21.256(c)(3)..................................................................................14

Tex. Educ. Code § 21.256(d).......................................................................................14

Tex. Educ. Code § 21.301(c) ......................................................................................10

Tex. Gov't Code ch. 311..............................................................................................15

Tex. Gov't Code Ann. § 2001.081 (West 2008)................................................ passim

**Commissioner's Decisions**

*Carnot v. North East Indep. Sch. Dist.*,
Docket No. 066-R1-605 (Comm'r Educ. 2005)....................................................10

*Dunlap v. Breckenridge Indep. Sch. Dist.*,
Docket No. 334-R1-692 (Comm'r Educ. 1995)....................................................10

*Gipson v. Ore City Indep. Sch. Dist.*,
Docket No. 178-R1-690 (Comm'r Educ. 1992)....................................................10

*Seifert v. Lingleville Indep. Sch. Dist.*,
Docket No. 174-R1a-782 (Comm'r Educ. 1983)......................................... passim

**Legislative Bills**

Tex. S.B. 341, 67th Leg., R.S. (1981) ........................................................... 12, 13

# SUMMARY OF THE ARGUMENT

The Court should reverse the district court's Final Judgment and affirm the Commissioner's Decision because Mr. Vazquez failed to prove that the Commissioner's decision was not supported by substantial evidence, and the Board did not abuse its discretion in admitting hearsay student statements during the term contract nonrenewal hearing.

Alternatively, if the Court were to hold that the Commissioner's Decision was in error, the Court should still reverse the district court's Final Judgment and remand this case back to the Commissioner for further proceedings because the district court's Final Judgment impermissibly dictated how the Commissioner should have correct errors identified by the district court by ordering the Commissioner to undertake certain actions.

## ARGUMENT

**I.  The Court should reverse the district court's ruling and affirm the Commissioner's Decision because Mr. Vazquez failed to prove that the Decision was not supported by substantial evidence, and the Board did not abuse its discretion in admitting the student statements during the term contract nonrenewal hearing.**

**A.  Mr. Vazquez failed to overcome the presumption that the Commissioner's Decision was supported by substantial evidence.**

Under substantial evidence review, the Court presumes that an agency's decision is supported by substantial evidence, and the appellant has the burden of overcoming this presumption. *Graff Chevrolet Co. v. Tex. Motor Vehicle Bd.,* 60 S.W.3d 154, 159 (Tex. App.—Austin 2001, pet. denied). *See also Lewis v. Southmore Savings Ass'n*, 480 S.W.2d 180, 183 (Tex. 1972) (contestant has "burden of proving" Commissioner's order "was not supported by substantial evidence").[1]

In the district court, Mr. Vazquez's initial brief ("District Court Brief") failed to address the issue of substantial evidence. CR 18-31. And, in Section "A" of his Appellee's Brief, an almost exact cut-and-paste of his District Court Brief, Mr. Vazquez likewise fails to brief the issue of substantial evidence. *Compare* Mr. Vazquez's District Court Brief, CR 18-31, *with* Appellee's Brief at 11-21.

---

[1]  The two cases cited by Mr. Vazquez are inapplicable because the standard of review in those cases was de novo, which is not the standard of review for Commissioner's decisions. *See R.R. Comm'n v. Shell Oil Co.*, 161 S.W.2d 1022, 1033 (Tex. 1942) (articulating standard of review for trial de novo; "the hearing of the evidence anew in the trial court" is allowed); *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 955-56 (Tex. 1984) (same proposition).

The entirety of Mr. Vazquez's District Court Brief, and Section "A" of Appellee's Brief, only address the issue of whether or not the reasons given by the School District in its proposal to nonrenew Mr. Vazquez's term contract were based on one or more grounds of previously established district policy reasons. *See, e,g.*, *Grounds v. Tolar Indep. Sch. Dist.*, 856 S.W.2d 417, 418 (Tex. 1993) (holding that district failed to provide reasons for nonrenewal "predicated" upon district policy).

Mr. Vazquez lists six reasons given by the school district to nonrenew his term contract; to the extent his arguments address whether substantial evidence existed, the Commissioner replies here to those arguments. *See* Appellee's Brief at 11-21. In addressing the first three of the six reasons for nonrenewal, Mr. Vazquez's sole cite to any authority—the Commissioner's decision in *Seifert*—is inapplicable as to why the evidence admitted at Mr. Vazquez's nonrenewal hearing does not somehow constitute substantial evidence supporting the decision to nonrenew Mr. Vazquez's term contract.[2] *See* Appellee's Brief at 11-14. *See also Seifert v. Lingleville Indep. Sch. Dist.*, Docket No. 174-R1a-782 (Comm'r Educ. 1983). A copy of the *Seifert* decision is attached as **Appendix 1**.

The Commissioner decided three issues in *Seifert*: (1) whether "community feelings of incompetence" was a valid reason to nonrenew Ms. Seifert's term

---

[2]     *Seifert* was a Commissioner's decision written by "Mark W. Robinette," presumably the same Mark Robinette who is Mr. Vazquez's counsel, when Mr. Robinette was employed by the Texas Education Agency.

teaching contract; (2) whether there was substantial evidence of "actual incompetency"; and (3) whether the Term Contract Nonrenewal Act of 1981 ("TCNA") applied to Ms. Seifert. **App. 1** at 2-4. The Commissioner decided that the school district's reason for nonrenewal, the "community feelings of incompetence" was not a valid reason for nonrenewal. **App. 1** at 2-3. The Commissioner also decided that the district had not adduced sufficient evidence of "actual incompetency." **App. 1** at 3-4.

On appeal to the Texas Supreme Court, the only issue was whether the school board gave Ms. Seifert "a legally valid reason for nonrenewal of her teaching contract pursuant to the [TCNA]." *Seifert v. Lingleville Indep. Sch. Dist.*, 692 S.W.2d 461, 462 (Tex. 1985). Interestingly, the Supreme Court noted that the court of appeals had held that the "Commissioner incorrectly excluded certain evidence as hearsay in concluding that there was not substantial evidence." *Id.* The Supreme Court, however, did not review either the court of appeal's holding or whether there was substantial evidence. *Id.* at 463 (noting that the Commissioner likewise ought not to have decided the substantial evidence question). Portions of a thirty-four year old Commissioner's decision—including a part that a court of appeals had determined was incorrectly decided—should not trump well-established case law, or even the Commissioner's Decision in the instant matter.

4

Regarding the fifth reason for his nonrenewal, Mr. Vazquez impermissibly asks this Court to reweigh the evidence and substitute its judgment for that of the Board. Appellee's Brief at 15-19. *See, e.g.*, *State v. Mid-South Pavers*, 246 S.W.3d 711, 726 (Tex. App.—Austin 2007, no pet.) (reviewing entity may not reweigh evidence or resolve credibility of witnesses). Only the Board, as trier of fact, may assess each witness's credibility.

Regarding reason number six, Appellee's Brief at 19-21, the quote from *Seifert* is, again, inapplicable because it only refers to whether valid policy reasons existed for nonrenewal. Further, Mr. Vazquez wrongly states, "[t]here is nothing to suggest that the evaluation at issue [2013] is based on anything other than the second hand accounts of tales of children, with no way to gauge whether they are exaggerated, taken out of context, made up, or the product of other flaws." Appellee's Brief at 20. He fails to address both the testimony of the two administrators and his own admissions, and attempts to explain away his actions and his failure to put on any rebuttal evidence besides his own testimony.[3]

---

[3] Additionally, the evidence does not support Mr. Vazquez's assertion that his evaluations were "consistently excellent." *See* Appellee's Brief at 21. While his 2011 evaluation shows that he "exceeds" expectation, one domain had only a rating of "Proficient." AR/TEA 376. Likewise, in 2009 Mr. Vazquez failed to meet the maximum standard in six of eight domains. TEA 389-91 (showing six scores of only "Proficient," and only two of "Exceeds Expectations"). And in 2007, in three of eight domains he likewise failed to meet the highest standard. TEA 399-400.

Also his claim that his 2012-13 evaluation "contained none of the negative ratings referred to" in the notice of proposed nonrenewal is likewise inaccurate. *See* AR/TEA 331-35 (showing four scores of "Below").

Mr. Vazquez has thus failed to overcome the presumption that the Commissioner's Decision was supported by substantial evidence. The Court, therefore, should reverse the district court's Final Judgment and hold that the Commissioner's Decision was correctly decided.

**B.     The Court must look at the record as a whole.**

Under a substantial evidence review, the Court must "determine whether the evidence *as a whole* is such that reasonable minds could have reached the same conclusion as the agency." *Stratton v. Austin Indep. Sch. Dist.,* 8 S.W.3d 26, 30 (Tex. App.—Austin 1999, no pet.) (emphasis added).

And while the Commissioner did find that "the issue of what hearsay exceptions apply is dispositive in the present case," all the non-hearsay evidence, in addition to the student statements, comprised the quantum of evidence the Commissioner found met the substantial evidence standard. *See* Comm'r's Decision at 16, CR at 70. The evidentiary record included multiple non-hearsay exhibits submitted by both the District and Mr. Vazquez; Mr. Vazquez's admissions to committing each of the three violations, AR vol. 2, at 126-27; 118/line 16; 130-31; the three Notices of Warning, AR vol. 2, at 174, 294, 173; the testimony of the Principal, the Executive Director, and the Superintendent regarding each of the three violations and their conclusions about whether Mr. Vazquez had violated district

6

policies, AR vol. 2, at 117-282; and the student statements.[4] Thus, Mr. Vazquez wrongly states that the evidence "consisted virtually entirely of hearsay." Appellee's Brief at 9.

Mr. Vazquez misstates the Commissioner's position and the law: the Commissioner did not hold that "hearsay that is objected to can constitute substantial evidence (even though it is not evidence at all)." Appellee's Brief at 3. Rather, the Commissioner decided that the hearsay evidence was properly admitted, and this evidence, along with all the non-hearsay evidence, constituted substantial evidence to support the decision to nonrenew Mr. Vazquez's term contract. Moreover, Mr. Vazquez cites no authority for his assertion.

### C. Because the student statements were properly admitted, the Board did not abuse its discretion when ruling to admit the evidence.[5]

---

[4] Mr. Vazquez erroneously claims that the evidence adduced at the nonrenewal hearing conducted before the school board consisted "almost exclusively of an administrator 'testifying' to the Board about what students had told her." Appellee's Brief at 3. The evidence shows that *three* witnesses testified for the school district—*two* administrators and the Superintendent. AR vol. 2, at 117-282.

[5] To the extent that the Texas Rules of Appellate Procedure apply to a district court's review of an agency decision, Mr. Vazquez has waived his right to raise the issue of whether section 2001.081 may be used as a hearsay exception when he failed to brief this issue in his District Court Brief. When a party fails to brief an issue in its initial brief, that party may not add that issue to its reply brief. *See Howell v. Tex. Workers' Compensation Comm'n*, 143 S.W.3d 416, 439 (Tex. App.—Austin 2004, no pet.) ("The rules of appellate procedure do not allow an appellant to include in a reply brief a new issue in response to some matter pointed out in the appellee's brief but not raised by appellant's original brief."); *Sunbeam Envtl. Servs. v. Tex. Workers' Comp. Ins. Facility*, 71 S.W.3d 846, 851 (Tex. App.—Austin 2002, no pet.) (same proposition).

Here, Mr. Vazquez failed to brief his section 2001.081 argument in his District Court Brief, which consisted of what is now his Issue "A" in his current Appellee's Brief—addressing whether

The Court reviews a trial court's evidentiary rulings for abuse of discretion. *Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex. 1998). A trial court only abuses its discretion "when it acts without regard for any guiding rules or principles." *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 754 (Tex. 1995). Even if the Court determines the evidence was improperly admitted, the Court will not reverse "unless the error probably caused the rendition of an improper judgment." *Owens–Corning Fiberglas Corp.,* 972 S.W.2d at 43 (citing Tex. R. App. P. 41.1).

### 1. Texas courts have ruled that the liberal hearsay exception of section 2001.081 allows for admission of hearsay by an agency.

While the *Lewis* court did rule that "[i]n Texas the hearsay rule applies in administrative hearings just as it does in court," the Texas Supreme Court then noted, "[i]t should quickly be added, that in administrative hearings ***considerable discretion is permitted*** in allowing evidence to be introduced by virtue of the ***liberal exceptions*** to the rule.") *Lewis*, 480 S.W.2d at 186 (emphasis added).[6]

---

the District's reasons for nonrenewal were based on District policy. Not until his reply brief did Mr. Vazquez address the section 2001.081 issue.

[6]  This Court has noted that the liberal hearsay exception found in Texas Government Code section 2001.081 "is broader for administrative proceedings than it is in the trial court." *Grubbs Nissan Mid-Cities v. Nissan N. Am., Inc.*, No. 03-06-00357-CV, 2007 WL 1518115, at *10 (Tex. App.—Austin May 23, 2007, pet. denied) ("The agency has broad discretion in deciding whether to admit expert testimony in an administrative hearing, and its decision will not be overturned on appeal absent an abuse of discretion.").

The Commissioner has never addressed this second sentence until his decision in the instant matter. For example, in *Seifert* the Commissioner only addressed the first sentence. To hold for Mr. Vazquez would require this Court to ignore this second sentence.[7] Not having previously considered the impact of the second sentence does not mean the Commissioner cannot rely on this sentence. If this were true, the Commissioner could ignore Supreme Court precedent simply by not considering a particular Supreme Court precedent in one decision and then not apply the precedent in all future decisions. The Commissioner lacks the authority to ignore Supreme Court precedent in any manner.

### a. The Commissioner has never expressly disallowed the application of the section 2001.081 hearsay exception.

In the instant matter, the Commissioner relied on the administrative hearsay exception codified in Texas Government Code section 2001.081 and approved of by Texas courts. *See* Tex. Gov't Code Ann. § 2001.081 (West 2008); *Lewis*, 480 S.W.2d at 186; *Grubbs*, 2007 WL 1518115, at *10. *See also* Tex. Assoc. of Sch. Bds. Legal Assistance Fund's Brief of Amicus Curiae at 13-14 (citing Texas cases where courts have held that admitting into evidence hearsay by children is constitutionally permissible).

---

[7] Mr. Vazquez's other assertions are not supported by case law. He provides no authority when he typifies hearsay as "non-evidence." Appellee's Brief at 21. Nor does he provide any case law to support his position that lack of cross-examination somehow renders hearsay evidence automatically inadmissible. Appellee's Brief at 10-11.

As already noted in the Commissioner's Brief, the Commissioner has long held that evidence meeting an exception to the hearsay rule may be admitted in a nonrenewal hearing conducted by a school board. Comm'r's Brief at 29 (citing *Carnot v. North East Indep. Sch. Dist.*, Docket No. 066-R1-605 (Comm'r Educ. 2005); *Dunlap v. Breckenridge Indep. Sch. Dist.*, Docket No. 334-R1-692 (Comm'r Educ. 1995); *Gipson v. Ore City Indep. Sch. Dist.*, Docket No. 178-R1-690 (Comm'r Educ. 1992)).[8]

Because case law contradicts his position, Mr. Vazquez cannot cite to any Commissioner's decisions or case law to support his assertions that hearsay is not evidence and that this hearsay evidence cannot help to satisfy the substantial evidence standard. *See* Appellee's Brief at 21-24; *Lewis*, 480 S.W.2d at 186; *Grubbs*, 2007 WL 1518115, at *10.

---

[8]     Unfortunately, the statements in *Dunlap* and *Carnot* claiming that the Rules of Evidence do not apply before school boards but apply before the Commissioner are not explicable and fail to explain how a school board's decision that did not violate the law could be overturned upon substantial evidence review. That issue, however, is not dispositive because in those decisions the Commissioner only decided that hearsay may be admitted in nonrenewal cases. The Commissioner resolves this case assuming that the rules of evidence apply and provides an explanation in his Decision:

> As shown above, this is an incomplete statement of the law. Hearsay applies in the same manner before the Commissioner as it does before a court, but before the Commissioner additional liberal exceptions apply. In *Gipson*, there is no analysis of the liberal hearsay exceptions in the administrative context. However, the Commissioner did reject the testimony of a teacher who repeated what two students told her as hearsay. It should also be noted that at the time *Gipson* was written, there was no Texas Education Code section 21.301(c) which in most cases, limits the Commissioner's review to issues raised in the local record.

Comm'r's Decision at 8, CR 62.

10

Even assuming section 2001.081 is inapplicable, the Commissioner left open the possibility that an even lower standard might be acceptable for the less formal setting of a nonrenewal hearing held before a school board (as opposed to a contested case hearing held before an administrative law judge or a hearing officer). *See Lewis*, 480 S.W.2d at 183 (noting that a commissioner's decision is "presumed to be a valid exercise of the power and discretion conferred on him").

If the Court were to reject the Commissioner's ability to apply Texas Government Code section 2001.081's hearsay exception in this instance, this Court would then have to address the issue of whether a lesser standard applies. The issue would then be whether, when teachers lack due process based on a property interest, there is any validity to the claim that the Texas Rules of Evidence strictly apply to a nonrenewal hearing conducted by a school board. *See* Tex. Educ. Code § 21.204(e) ("A teacher does not have a property interest in a contract beyond its term.").

**b.      There is no abuse of discretion in admitting the statements under section 2001.081 or even a lesser standard.**

The Court need not necessarily determine whether section 2001.081 might be applied, just whether there was not an abuse of discretion when the student statements were admitted. The Commissioner did not make a blanket adoption of the APA to a nonrenewal hearing conducted by a school board; he did apply, by analogy, the hearsay exception of section 2001.081 in determining whether the

11

student statements were properly admitted. *See Christopher Columbus St. Mkt. v. Zoning Bd. of Adjustments of City of Galveston*, 302 S.W.3d 408, 418 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (noting that section 2001.081 allows for "admission of otherwise inadmissible evidence under certain conditions"); *Tex. Dep't of Pub. Safety v. Kimbrough*, 106 S.W.3d 747, 751 (Tex. App.—Fort Worth 2003, no pet.) (noting that section 2001.081 allows for admission of "other necessary evidence that is not precluded by statute," in addition to evidence admissible under the Texas Rules of Evidence).

Beyond his cursory cite to Education Code section 21.207 and the School District's policy, Mr. Vazquez fails to show how the Commissioner abused his discretion in applying section 2001.081.

### c. Legislative history supports application of hearsay exception.

The legislative history of the TCNA demonstrates that the right of a teacher to cross-examine witnesses does not automatically render hearsay evidence inadmissible. When the Texas Senate first passed the bill that would become the TCNA, the engrossed version established the procedures for a nonrenewal hearing.[9]

---

[9] Section 13.258. Hearings.

   (a) The president of the board shall fix a mutually agreeable time and place for the hearing, which shall be not later than the 30th day after the day on which the board receives the request. If a record of the hearing is requested by one or more of the parties, the president of the board shall arrange for an official transcript of the hearing.

   (b) The board shall inquire fully into the facts as they relate to the matter of the hearing.

A teacher would have had the authority not only to cross-examine witnesses but also to call and examine witnesses, to introduce into evidence documents and other evidence, and to obtain a subpoena on a showing of relevance and reasonable scope. Lastly, only relevant or material evidence could be admitted. The House, however, stripped SB 341 of almost all the proposed statutory rights during nonrenewal hearings. The original TCNA only required that the hearing be conducted in accordance with rules promulgated by the district. *See* current version at Tex. Educ. Code § 21.207(b) ("The hearing must be conducted in accordance with rules adopted by the board."). Because there was no prohibition under the originally-passed TCNA as to hearsay evidence, any prohibition as to the consideration of hearsay evidence must be found in due process in term contracts.

---

(c) The hearing shall, be closed to the public unless the teacher requests a public hearing, and the hearing shall be confined to the reasons given in the notice for termination or demotion.

(d) The teacher is entitled to appear at the hearing in person, by counsel or by other representative; to call, examine, cross-examine relevant witnesses; and to introduce into the record relevant documentary and other evidence. The president of the board shall issue a subpoena on application by either party and showing of general relevance and reasonable scope.

(e) Testimony may not be given or evidence introduced if it is not relevant or material to the allegations set forth in the notice or if it is based on procedures not in compliance with sections 31.253 through 13.255 of this code.

(f) Evidence detrimental to a teacher's conduct, service, character, or personality may not be introduced as a basis for termination or demotion unless the evidence was called to the attention of the teacher promptly after the board knew or reasonably should know of its existence and unless the teacher was given an opportunity to respond to or rebut it.

Tex. S.B. 341, 67th Leg., R.S. (1981) (emphasis added). A copy of the proposed section 13.258 is attached as **Appendix 2**.

The Legislature, however, took away such rights with the passage of SB 1 in 1995. While the district court relied on Education Code section 21.207(c) for the proposition that the right to cross-examine witnesses precludes admission of any hearsay evidence, even the plain text of the statute does not support this position.[10] The right to cross-examine witnesses means exactly what it says. When a district calls a witness and asks the witness questions, the teacher also gets to ask that witness questions. In adopting SB 1 in 1995, the Legislature also adopted the procedures to be used when an independent hearing examiner hears a proposed nonrenewal or contract termination. In such a case, the Legislature provided that "the Texas Rules of Evidence apply at the hearing," Tex. Educ. Code § 21.256(d), despite the immediately preceding subsection giving a teacher the right to "cross-examine each adverse witness." Tex. Educ. Code § 21.256(c)(3). The Legislature knows how to mandate the use of the hearsay rules found in the Texas Rules of Evidence, and the decision to not require the use of the Texas Rules of Evidence when a school board hears a proposed nonrenewal case is telling. Allowing a teacher to cross-

---

[10]  At the hearing, the teacher may:

      (1) Be represented by a representative of the teacher's choice;

      (2) hear evidence supporting the reason for nonrenewal;

      (3) cross-examine adverse witnesses; and

      (4) present evidence.

Tex. Educ. Code § 21.207(c).

14

examine witnesses does not prohibit a district from admitting evidence under a hearsay exception.[11]

### 2. The student statements met the "not reasonably susceptible to proof" standard.

The Commissioner's Brief addressed why the student statements met the three-pronged test of section 2001.081. Comm'r's Brief at 23-25. *See also Sierra v. Nelson*, No. 03-00-00161-CV, 2000 WL 1587652, at *5 (Tex. App.—Austin Oct. 26, 2000, no pet.) ("Often, local school boards do not have the resources to conduct a full trial-type hearing and procure an administrative law judge for every grievance presented to them.").

Regarding the first prong of "not reasonably susceptible to proof," Mr. Vazquez erroneously asserts that this is a burden of proof issue and that the District needed to have proved that the witnesses were unavailable. This a misstatement of the evidentiary rules regarding admissibility, and he provides no authority to support

---

[11] Mr. Vazquez also erroneously claims, without citation, that the "Commissioner argues that, nevertheless, the Commissioner's construction of a statute he administers is entitled to deference or great weight." Appellee's Brief at 5. The Commissioner did not make this argument; rather, the Commissioner stated that his interpretation is to be given great deference. *See, e.g.*, *Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex. 1994) (Commissioner's interpretation is to be given deference); *see also Judson Indep. Sch. Dist. v. Ruiz*, 04-13-00706-CV, 2015 Tex. App. LEXIS 3055 (Tex. App.—San Antonio Mar. 31, 2015, no pet. hist.) (deferring to Commissioner's interpretation of statutory timelines when reviewing a school decision under Texas Education Code chapter 21, subchapter G). Subchapter G is the same statute used by the Commissioner to review the present case.

Whereas, it is the Court's purview to interpret the construction of statutes. *See* Tex. Gov't Code ch. 311 (Tex. Code Construction Act).

this erroneous assertion. *See* Appellee's Brief at 27-28. Moreover, the evidence was admitted over *Mr.Vazquez's* objection; he is, therefore, required to show how the admission of the statements was an abuse of discretion.

3. **As noted in the School District's Brief, the U.S. Supreme Court and the Fifth Circuit have held that hearsay evidence may be admitted and considered in federal administrative contested case hearings.**

The School District provided briefing of U.S. Supreme Court and Fifth Circuit cases in which the courts held that hearsay evidence may be admitted and considered in federal administrative contested case hearings. *See, e.g.*, *Richardson v. Perales*, 1971, 402 U.S. 389, 400-01 (1971); *Sch. Bd. of Broward Co., Fla. v. Dep't of Health, Educ., & Welfare*, 525 F.2d 900 (5th Cir. 1976). *See also FTC v. Cement Inst.*, 333 U.S. 683, 705-06 (1948) (federal "administrative agencies . . . have never been restricted by the rigid rules of evidence"); *Woolsey v. Nat'l Transp. Safety Bd.*, 993 F. 2d 516, 521 n.11 (5th Cir. 1993) ("Even if this [evidence] involved hearsay, 'the only limit to the admissibility of hearsay [in the administrative context] is that it bear satisfactory indicia of reliability. . . . [I]t is not the hearsay nature *per se* of the proffered evidence that is significant, it is its probative value, reliability and the fairness of its use that are determinative.'" (quoting *Calhoun v. Bailar,* 626 F.2d 145, 148 (9th Cir. 1980), *cert. denied,* 452 U.S. 906, 101 S.Ct. 3033, 69 L.Ed.2d 407 (1981)).

Thus, the school district did not abuse its discretion in admitting the student statements.

**D.**    **The hearsay statements, admitted under the section 2001.081 hearsay exception, satisfy the substantial evidence standard.**

The Commissioner and the School Board described the totality of the evidence in their briefs and why the student statements were reliable and contributed to meeting the substantial evidence standard. School District's Brief at 3-29; Comm'r's Brief at 11-15. Mr. Vazquez, however, failed to provide any reasons as to why the statements might be unreliable, nor does he address the factors cited by the Appellants that support their position that the evidence is reliable. *See* Appellee's Brief at 10-11.

**1.**    **Courts must look at the particular evidence to determine weight and credibility.**

"Each substantial evidence case must be decided on its own facts." *Lewis*, 480 S.W.2d at 185. Mr. Vazquez quotes an excerpt from *Seifert*[12] as though this description of the specific evidence in that matter somehow constitutes a blanket rule regarding statements made by students. Appellee's Brief at 12; 15; 23. Rather, this sentence applied only to specific evidence in *Seifert* and is not some general

---

[12]    The excerpt from *Seifert* that Mr. Vazquez thrice quotes is: "The TCNA does not contemplate such a roundabout method of nonrenewing a teacher; it was not enacted to allow the nonrenewal of a competent (or excellent) teacher based on second hand accounts of the tales of children which [sic] grow more exaggerated with each retelling." *See* **App. 1** at 3.

evidentiary principle that can be applied in other cases. The evidence in *Seifert* was much different than the hearsay evidence in this matter: the superintendent's testimony was "based on information related to him by members of the [board], which was related to them by parents in the community; and the parents, in turn, based on their conclusions on statements made to them by their children." *Seifert* at 3.

In the present case, unlike in *Seifert*, there is no evidence of student testimony continually changing into a more exaggerated version. The student statements in this matter do have reliability and weight: there were multiple statements that corroborated the admissions by Mr. Vazquez; the statements were consistent, over two separate investigations, by two separate administrators; and each statement was written and signed by the students. Additionally, Mr. Vazquez was provided copies of the statements prior to the hearing.

### 2. Mr. Vazquez failed to put on his own contested case and rebuttal evidence.

Mr. Vazquez called only himself to testify at the nonrenewal hearing. He failed to call any impeachment or character witnesses. And none of the exhibits he introduced related to or contradicted the statements of the students in the three investigations. He fails to address why he chose not to put on a case or rebut any of the District's evidence. *See* Appellee's Brief, e.g., at 10-11.

18

Moreover, Mr. Vazquez fails to support his assertion that he had some inherent right for the school board to call the students as witnesses. Appellee's Brief at 33. And he fails to address the issue that he himself could have, but did not, call any or all of the students, or any other students in the class as impeachment witnesses.

His failure to put on a case and then blame the Board is very similar to what occurred in *Gilder v. Meno*, 926 S.W.2d 357, 362, 364 (Tex. App.—Austin 1996, writ denied). Ms. Gilder also failed to put on any evidence "to refute any of the evidence" put on by the District." *Id.* at 362 ("[t]o allow a teacher to lie behind the log and not present her case until the matter reaches the state agency, without good cause, would make a mockery of the local board hearing").

### 3. Relatedly, Mr. Vazquez's due process violation claim lacks merit.

Mr. Vazquez erroneously claims he has some due process right to not have hearsay evidence admitted at a nonrenewal hearing, yet he cites no authority for this proposition.[13] Appellee's Brief at 33-35 (calling hearsay "non-evidence"). Despite his mischaracterization to the contrary, the Commissioner has never, and does not

---

[13] The only case he cites to, *Vitek*, is inapplicable because the issue in *Vitek* was "whether the Due Process Clause of the Fourteenth Amendment entitles a prisoner convicted and incarcerated . . . to certain procedural protections, including notice, an adversary hearing, and provision of counsel, before he is transferred involuntarily to a state mental hospital for treatment of a mental disease or defect." *Vitek v. Jones*, 445 U.S. 480, 483 (1980). Mr. Vazquez fails to state how the due process rights associated with the involuntary transfer of a prisoner to a state mental hospital somehow relate to or apply in a nonrenewal hearing of a term teaching contract.

do so in this matter, claim that somehow a lack of a property interest would allow for inadmissible evidence to be considered. Here, the only question is whether the admission of the student statements was not an abuse of discretion and whether the substantial evidence standard was met.

**II.    The district court impermissibly directed the Commissioner how to correct an error identified by the district court.**

A court may not usurp an agency's authority and direct how an agency would correct an error identified by the court. *Pub. Util. Comm'n v. GTE-SW, Inc.*, 833 S.W.2d 153, 174-75 (Tex. App.—Austin 1992), *rev'd in part on other grounds*, 901 S.W.2d 401 (Tex. 1995) (holding that district court usurped agency's authority when it ordered PUC to implement surcharge). *See also Emps.' Ret. Sys. of Tex. v. McKillip*, 956 S.W.2d 795, 802 (Tex. App.—Austin 1997, no pet.), *overruled on other grounds*, *Tex. Natural Res. Conservation Comm'n v. Sierra Club*, 70 S.W.3d 809, 814 (Tex. 2002) (holding that court violated separation of powers doctrine when it reversed and remanded case with instructions); *Ford Motor Co. v. Butnaru*, 157 S.W.3d 142, 149 (Tex. App.—Austin 2005, no pet.) (district court improperly required agency to conduct investigation and dictated how agency had to correct error identified by court).

Here, the district court has improperly rendered to the Commissioner the impermissible instruction that the Commissioner enter an order "ORDERING the

20

district to comply with Texas Education Code [s]ection 21.304(e) and/or (f)."[14] Even if this Court finds that the district court correctly reversed the Commissioner's Decision, the Commissioner is allowed to determine how to correct the errors identified by the district court.[15]

## PRAYER

The Court should reverse the district court's Final Judgment and affirm the Commissioner's Decision because the Commissioner correctly decided that the School District properly admitted hearsay student statements and substantial evidence existed to support the Board's decision to nonrenew Mr. Vazquez's term contract. Alternatively, if the Court were to hold that the Commissioner's Decision in the present case was in error, the proper remedy would be to remand this case back to the Commissioner for further proceedings.

---

[14]     Sec. 21.304. DECISION OF COMMISSIONER.

(e) If the commissioner reverses the action of the board of trustees, the commissioner shall order the school district to reinstate the teacher and to pay the teacher any back pay and employment benefits from the time of discharge or suspension to reinstatement.

(f) Instead of reinstating a teacher under Subsection (e), the school district may pay the teacher one year's salary to which the teacher would have been entitled from the date on which the teacher would have been reinstated.

[15]     Mr. Vazquez's prayer also asks this Court to impermissibly render. *See* Prayer nos. 4 and 5 (asking the Court to order the School District to "reinstate" him or, alternatively, to order the Commissioner to enter a similar order).

21

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

DAVID A. TALBOT, JR.
Chief, Administrative Law Division

*/s/ Jennifer L. Hopgood*
JENNIFER L. HOPGOOD
State Bar No. 24073010
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Administrative Law Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4300
Facsimile: (512) 320-0167
jennifer.hopgood@texasattorneygeneral.gov

**Attorneys for the Texas Education Agency**

## CERTIFICATE OF COMPLIANCE

I certify that the brief submitted complies with Texas Rules of Appellate Procedure 9 and the word count of this document is 5,801.

Date: April 7, 2015.

*/s/ Jennifer L. Hopgood*
JENNIFER L. HOPGOOD

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on April 7, 2015, on the following by electronic service and by email:

Stacy Tuer Castillo
WALSH, ANDERSON, GALLEGOS,
GREEN & TREVINO, P.C.
100 NE Loop 410, Suite 900
San Antonio, Texas 78216
Telephone: (210) 979-6633
Facsimile: (210) 979-7024
Email: scastillo@wabsa.com

Mark W. Robinett
BRIM, ARNETT, ROBINETT, & CONNERS, P.C.
2525 Wallingwood Drive, Building 14
Austin, TX 78746
Telephone: (512) 328-0048
Facsimile: (512) 328-4814
Email: mrobinett@brimarnett.com

*/s/ Jennifer L. Hopgood*
JENNIFER L. HOPGOOD

# APPENDIX

1. *Seifert v. Lingleville Indep. Sch. Dist.*,
    Docket No. 174-R1a-782 (Comm'r Educ. 1983)

2. Tex. S.B. 341, 67th Leg., R.S. (1981)

# Tab 1

*Seifert v. Lingleville Indep. Sch. Dist.,*

Docket No. 174-R1a-782 (Comm'r Educ. 1983)

DOCKET NO. 174-R1a-782

JEANETTE SEIFERT
§
BEFORE THE STATE

§

§

V.
§
COMMISSIONER OF EDUCATION

§

LINGLEVILLE INDEPENDENT
§

SCHOOL DISTRICT
§
THE STATE OF TEXAS

DECISION OF THE COMMISSIONER
Statement of the Case

Jeanette Seifert, Petitioner, brings this appeal from an action of the Board of Trustees of Lingleville Independent School District (LISD), Respondent, to nonrenew her teaching contract for the 1982-83 school year.

Mark W. Robinett is the Hearing Officer appointed to prepare this Proposal for Decision and such other documents as may be necessary in this case. Petitioner is represented by Dianne E. Doggett, Attorney at Law, Austin, Texas. Respondent is represented by Marilyn Shell, Attorney at Law, Stephenville, Texas.

On November 16, 1982, the Hearing Officer entered a Proposal for Decision recommending to the State Commissioner of Education that Petitioner's appeal be granted. The record reflects that a copy of the Proposal for Decision was received by all parties, and that Respondent's Exceptions to the Hearing Officer's Proposal for Decision were filed on December 8, 1982. No replies to Respondent's Exceptions were filed.

Findings of Fact

Having considered all evidence and matters officially noticed, in my capacity as State Commissioner of Education, I make the following Findings of Fact:

1. At all times relevant to this appeal, Respondent had in full force and effect School Board Policy DOAD (Ex. C) which provides, in part, as follows:

Reasons for nonrenewal of a professional certified employee's contract shall be:

1. Deficiencies pointed out in observation reports, evaluations, or other Supplemental memoranda.

3. Incompetency

15. Any activity, school-connected or otherwise, that because of publicity given it, or knowledge of it among students, faculty, and community, impairs or diminishes the employee's effectiveness in the District.

2. Petitioner was given written notice on March 2, 1982 that the superintendent had recommended to the Board of Trustees that Petitioner's contract be nonrenewed because of a "[c]ommunity feeling of incompetence." Ex. D.

3. On March 29, 1982, a hearing was held before LISD's Board of Trustees on the issue of the proposed nonrenewal of Petitioner's contract.

4. After the hearing on March 29, 1982, LISD's Board of Trustees voted to nonrenew Petitioner's contract for the 1982-83 school year.

Discussion

Petitioner contends that the nonrenewal of her contract by LISD's Board of Trustees is invalid under the Term Contract Nonrenewal Act (TCNA), Tex. Educ. Code Ann. §21.201 et seq. (Vernon Supp. 1982), because (1) the reason given Petitioner for her proposed nonrenewal (i.e., "community feeling of incompetence") is not listed as a reason for nonrenewal in Policy DOAD; (2) a "community feeling of incompetence" is not a proper basis for nonrenewal, because it is not educationally related; and (3) there is not substantial evidence of incompetency, which is the only reason for nonrenewal listed in Policy DOAD of which she had fair notice.

Respondent, on the other hand, contends (1) that its decision is not subject to the TCNA, because Petitioner's contract was signed before the Act took effect; (2) it is not requisite for a district's policy reasons for nonrenewal to be educationally related; (3) "community feeling of incompetence" is nonetheless an educationally related standard which encompasses the three reasons for nonrenewal in Policy DOAD, previously set forth; (4) the Petitioner waived any defect in the notice by participating in the March 29 hearing; and (5) its decision is supported by substantial evidence.

1. "Community Feeling of Incompetence"

Section 21.203(b) of the TCNA instructs boards of trustees to establish policies which establish reasons for nonrenewal. Section 21.204 requires the local board of trustees to give a teacher written notice of a proposed nonrenewal, which contains a statement of all the reasons for the proposal. Viewing the Act as a unified procedural scheme for dealing with the nonrenewal of term contracts, it must be concluded that a teacher cannot be nonrenewed for a reason of which he or she has not been given fair notice.

"Community feeling of incompetence" is the only reason for nonrenewal of which Petitioner was given written notice. It is a reason inconsistent with the purposes of the TCNA. Section 21.203(b) of the Act, which requires the local board of trustees to establish reasons for nonrenewal,

has no purpose if not to provide the individual teacher with advance notice of what he or she must do in order to retain his or her position with the school district. For example, a teacher might be reasonably required to do such things as prepare lesson plans; keep proper records; be punctual; be competent; avoid activities which could impair or diminish the teacher's effectiveness in the district; and cultivate a working relationship with parents, the community, and colleagues. However, a teacher cannot reasonably be required to control the community's perception of his or her competence as an instructor.

A holding to the effect that a school district may nonrenew a teacher for a reason over which the teacher has no control would render §21.203 an extremely futile piece of legislation; the teacher's situation would be only negligibly improved over the days in which he or she could be nonrenewed for no reason or any reason, with the exception, of course, of a reason prohibited by federal law. A teacher could be nonrenewed for the reason that "the superintendent (or principal, or one member of the board of trustees) thinks you are incompetent." As long as the superintendent (or principal, or one member of the board of trustees) were to state under oath that, in his or her opinion, the teacher in question was incompetent, that one line of testimony, by itself, could serve as sufficient evidence to support the board of trustees' nonrenewal decision on appeal to the Commissioner.

The TCNA does not contemplate such a roundabout method of nonrenewing a teacher; it was not enacted to allow the nonrenewal of a competent (or excellent) teacher based on second hand accounts of the tales of children which grow more exaggerated with each retelling. In short, the community's perception of a teacher's competence is irrelevant. What is relevant is whether or not the teacher actually is competent and the evidence pertaining to that issue. "Community feeling of incompetence," therefore, is not a permissible reason for nonrenewal and it is unnecessary to decide whether there was substantial evidence before the Board of Trustees in support of that reason.

2. Actual Incompetency

In her brief concerning the issue of substantial evidence, Petitioner acknowledges that she received fair notice of the reason of "incompetency." It must, therefore, next be determined whether there was substantial evidence before the Board of Trustees to support this reason.

The evidence at the hearing before the Board of Trustees in support of the Board's decision consisted of the following: (1) the superintendent's testimony concerning his opinion that the Petitioner was incompetent, based on "items presented to [him]" by school board members (Tr. 9); (2) the testimony of parents in the community concerning their reasons for believing that Petitioner was incompetent, based on statements made to them by their children; and (3) Petitioner's failure rate (Resp. Ex. H).

All of the above evidence, except the failure rate, is merely hearsay: the superintendent's testimony is based on information related to him by members of the Board of Trustees, which was related to them by parents in the community; and the parents, in turn, based their conclusions on statements made to them by their children.

Although Petitioner's failure rate, which was not based on hearsay, was the highest in the school (Tr. 68), that fact alone does not necessarily indicate that Petitioner is incompetent. The most failing grades in the school district could just as well be assigned by an excellent teacher

with high standards.  In addition, if the grades assigned by a teacher are to be taken as an indication of a teacher's competence, a teacher who assigns every student an "A" could use that fact as evidence that he or she had attained a high level of teaching competence.

Also introduced into evidence before the Board of Trustees were the administration's evaluations of Petitioner, the consideration of which by the Board is required by §21.202 of the TCNA.  The most recent evaluation, dated February 16, 1982, is generally supportive of the Petitioner.*

Under the circumstances, it must be concluded that the Board of Trustees' decision was not based on substantial evidence of actual incompetency.

3.  Applicability of the TCNA to Petitioner

The only contention of Respondent that has not been resolved to this point is its assertion that Petitioner is not entitled to the protections of the TCNA because she had signed her contract for the 1981-82 school year before the Act took effect on August 31, 1981.  As of the effective date of the TCNA, the local board of trustees became obligated to comply with the Act's terms if it should "choose not to renew the employment of any teacher employed under a term contract effective at the end of the contract period." The date on which the teacher signed his or her contract does not affect that obligation in any way.

Respondent's Exceptions to Proposal

In its Exceptions to the Hearing Officer's Proposal for Decision, Respondent contends that the hearsay rule did not apply to the local school board hearing in this case, inasmuch as §21.205(b) of the TCNA authorizes the local school district to conduct the required hearing in accordance with rules promulgated by the district.  Respondent's Policy DOAD states that "[t]he Board may consider only such evidence as is presented at the hearing and need consider only such evidence as it believes to be fair and reliable." Respondent, therefore, argues that it "could properly consider any evidence presented at the hearing which the board believed to be fair and reliable, whether hearsay or not."

Regardless of the manner in which the local board of trustees structures its hearings, however, §21.207(a) of the TCNA authorizes the Commissioner of Education to review the decisions of local school boards in nonrenewal cases on a substantial evidence basis.  It is well established that when the legislature uses a word, such as "evidence," which has a settled legal significance, it is presumed to have been used in that sense. First National Bank of Mineola v.  Farmers & M.  State Bank, 417 S.W.2d 317, 329 (Tex.  Civ.  App.  - - Tyler 1967, writ ref'd n.r.e.).

In the present case, it is not necessary to define precisely what "evidence" is, because it is clear what "evidence" is not: "In Texas the hearsay rule applies in administrative hearings, just as it does in court.  And it is a rule that forbids the reception of evidence rather than one that merely goes to the weight of the evidence." Lewis v. Southmore Savings Association, 480 S.W.2d 180, 186 (Tex.  1972).

Respondent contends, however, that the hearsay in this case should be accorded some weight, because it was not objected to even though it could have easily been refuted if not true.  Respondent cites Marion v. Hutton, 374 S.W.2d 284 (Tex.  Civ.  App.  - - Amarillo 1963, writ ref'd n.r.e.) in support of this proposition.  That case, however, is contrary

to the otherwise well-established rule in Texas that hearsay evidence is "[w]holly incompetent and without probative force, and can never form the basis for establishing a cause of action, finding of fact, or judgment of court, whether objected to nor not." White v. White, 590 S.W.2d 587, 589 (Tex. Civ. App. - - Houston [1st Dist.] 1979, no writ). See also Aetna Insurance Company v. Klein, 325 S.W.2d 376, 379 (Tex. 1959); Missouri Pac R. Co. v. Thomas, 579 S.W.2d 46, 49 (Tex. Civ. App. - - Beaumont 1979, writ ref'd n.r.e.); Main Bank & Trust v. Nye 571 S.W.2d 222, 224 (Tex. Civ. App. - - El Paso 1978, writ ref'd n.r.e.); Perkins v. Springstun, 557 S.W.2d 343, 345 (Tex. Civ. App. - - Austin 1977, writ ref'd n.r.e.); Hanson Southwest Corp v. Dal-Mac Const. Co., 554 S.W.2d 712, 723 (Tex. Civ. App. - - Dallas 1977, writ ref'd n.r.e.); United Services Automobile Ass'n v. Ratterree, 512 S.W. 2d 30, 33 (Tex. Civ. App. - - San Antonio 1974, writ ref'd n.r.e.); Hughes v. State, 508 S.W.2d 167, 169 (Tex. Civ. App. - - Corpus Christi 1974, writ ref'd n.r.e.); Clift v. Dunn, 477 S.W. 2d 641, 642 (Tex. Civ. App. - - Waco 1972, no writ).

In addition, in Hanslik v. Nickels Ginning Company, 496 S.W.2d 788, 792 (Tex. Civ. App. - - Amarillo 1973, no writ), the same court that decided Marion, on which Respondent relies, stated, in regard to certain hand printed notations on a document, "[T]he hand printed notations are hearsay and inadmissible as proof of any fact . . .; and the notations appearing on the drafts admitted into evidence with or without objection are incompetent to establish any fact or to form the basis of a judgment." That court had previously held to the same effect in Sampson v. Apco Oil Corporation, 476 S.W.2d 430, 431 (Tex. Civ. App. -- Amarillo 1972, no writ). Respondent's contention that hearsay testimony can be considered by the Commissioner in support of a nonrenewal decision is, therefore, unpersuasive.

Finally, in regard to hearsay, Respondent argues that the testimony of Mrs. Bays (Tr. 31) that her daughter came home crying and upset because Petitioner had "hollered" at one of her friends, was admissible under the excited utterance exception of the hearsay rule. To constitute an excited utterance, however, the statement must be made before there has been time to contrive and misrepresent; it must be "made under circumstances which raise a reasonable presumption that it is the spontaneous utterance of thought created by or springing out of the [exciting] occurrence itself and, so to speak, becomes a part of the occurrence." Truck Insurance Exchange v. Michling, 364 S.W.2d 172, 173-74 (Tex. 1963). In addition, there must be proof independent of the excited utterance, of the exciting occurrence. Id. at 174. In the present case, the only evidence of the occurrence is the hearsay statement which, like the proof at issue in Michling, "is attempting to lift itself by its own bootstraps." Id. Mrs. Bays' testimony, therefore, is inadmissible even under a liberal construction of the excited utterance exception to the hearsay rule.

One other exception which merits response is Respondent's contention that applying the TCNA to a contract signed before the Act's effective date constitutes a violation of the provisions of the Texas and United States Constitutions which prohibit impairment of contractual obligations. Respondent argues as follows:

The general rule is that operational policies promulgated by a school board prior to making a contract of employment with a teacher form part of the contract, and the teacher's employment is subject thereto. Bowen

v.  Calallen Independent School District, 603 S.W.2d 229 (Tex.  Civ. App.  - - Corpus Christi, 1980, ref'd n.r.e.).  It is undisputed that under the policies and statutes in effect as of June 21, 1981, Respondent could lawfully nonrenew Petitioner's term contract in its sole discretion without any reasons.  TEXAS EDUCATION CODE Section 23.28.  At the time the contract was executed, Petitioner had no "property" interest in employment beyond the 1980-81 (sic) school year, and Respondent had the right to nonrenew the contract.  The proposed retroactive application of the Term Contract Nonrenewal Act would impermissably (sic) impair Respondent's contractual rights to spend local funds on teachers the board chose to renew.

There is no evidence, however, that Respondent had promulgated any operational policies prior to making the contract of employment with Petitioner which would allow it to nonrenew Petitioner's term contract at its sole discretion without any reasons.

As for Respondent's reliance on the fact that Petitioner had no property interest under State law in employment beyond the 1981-82 school year at the time the contract was executed, it must be determined whether Respondent had a vested interest in Petitioner's status at the time the contract was signed.  Wood v.  Lovett, 313 U.S.  362, 371 (1941).  There is, however, no property right or vested interest in any rule of common law; the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative objective, despite the fact that "otherwise settled expectations" may be upset thereby.  Duke Power Co.  v.  Carolina Environ.  Study, 438 U.S.  59, 88, n.  32 (1978).

Respondent's expectation, therefore, that, under common law, Petitioner would continue to have no property interest in employment beyond the 1981-82 school year, was a mere expectancy, contingent on the action (or inaction) of the legislature.  Upon the enactment of the TCNA, that expectation ceased and Respondent became bound to honor Petitioner's newly created statutory rights.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as State Commissioner of Education, I make the following Conclusions of Law:

1.  Petitioner was entitled to the benefits afforded by the Term Contract Nonrenewal Act.

2.  Petitioner could not properly be nonrenewed pursuant to the Term Contract Nonrenewal Act because of a "community feeling of imcompetency.

3.  There is not substantial evidence of actual incompetency.

4.  Petitioner's appeal should be, in all things, GRANTED.

O R D E R

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact and Conclusions of Law, in my capacity as State Commissioner of Education, it is hereby

ORDERED that Petitioner's appeal be, in all things, GRANTED.

SIGNED AND ENTERED this 27th day of Jan., 1983.

_____
RAYMON L. BYNUM
COMMISSIONER OF EDUCATION

DOCKET NO. 174-R1a-782

JEANETTE SEIFERT
§
BEFORE THE

§

V.
§
STATE BOARD OF EDUCATION

§

LINGLEVILLE INDEPENDENT
§

SCHOOL DISTRICT
§
THE STATE OF TEXAS

O R D E R

BE IT KNOWN that on this date came on to be heard the Respondent's appeal in the above-styled and numbered matter; and, after due consideration, it is accordingly

ORDERED that this appeal be, in all things, DENIED, and the order of the Commissioner of Education entered on the 27th day of January, 1983 is hereby AFFIRMED and the findings of fact and conclusions of law therein adopted.

SIGNED AND ENTERED the 9th day of APRIL, 1983.


_____
JOE KELLY BUTLER, CHAIRMAN
STATE BOARD OF EDUCATION

ATTEST:

_____
WAYNE WINDLE, SECRETARY
STATE BOARD OF EDUCATION

DOCKET NO. 174-R1a-782

JEANETTE SEIFERT

§

BEFORE THE

§

V.

§

STATE BOARD OF EDUCATION

§

LINGLEVILLE INDEPENDENT

§

SCHOOL DISTRICT

§

THE STATE OF TEXAS

O R D E R

BE IT KNOWN that on this date came on to be heard Respondent's Motion for Rehearing in the above-styled and numbered matter; and, after due consideration, it is hereby

ORDERED that this motion be, in all things, DENIED.

SIGNED AND ENTERED the 11 day of JUNE, 1983.

_____
JOE KELLY BUTLER, CHAIRMAN
STATE BOARD OF EDUCATION

ATTEST:

_____
WAYNE WINDLE, SECRETARY
STATE BOARD OF EDUCATION

*. Even were the evaluations otherwise, it should be noted that they would not constitute substantial evidence in and of themselves in a case in which the person making the evaluation does not testify. The thrust of the TCNA is to require (1) administrators to conduct honest evaluations, (2) local boards of trustees to consider those evaluations prior to giving notice of any proposed nonrenewals, and (3) the evaluators to appear at any hearing before the local boards of trustees and testify concerning the accuracy of and the basis for the evaluations. This observation should not be construed to mean that a local board of trustees is bound by the evaluation and testimony of an evaluator or that this is the only means by which substantial evidence may be adduced at a local hearing; however, this process is certainly one of the principal concerns of the Act.

#174-R1a-782

# Tab 2

Tex. S.B. 341, 67th Leg., R.S. (1981)

## A BILL TO BE ENTITLED

### AN ACT

relating to standards for the employment of public school professional personnel.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.   Chapter 13, Texas Education Code, as amended, is amended by adding Subchapter E to read as follows:

"SUBCHAPTER E.   PROFESSIONAL EMPLOYMENT STANDARDS

"Section 13.251.  POLICY.  In order to maintain an effective system of public education, highly qualified professional educators must be attracted, retained, and stimulated to optimum performance. These objectives can be accomplished only if the employees are evaluated and retained on the basis of their performance of assigned teaching duties, afforded due process prior to termination, and protected against unjustifiable actions by the boards that employ them. It is the purpose of this subchapter to provide that evaluation of and protection for professional educators employed in the public schools in the State of Texas by providing for evaluation and guaranteeing due process.  This subchapter does not establish or grant tenure to any teacher.

"Section 13.252. DEFINITIONS.  In this subchapter:

"(1) 'Board' means the board of trustees of a school district.

"(2) 'Teacher' means a person employed in a professional capacity by a board to instruct, supervise, administer, or direct an educational program but does not include a superintendent, an assistant superintendent, an associate superintendent, or another

S0296     _replaced by Floor 1 amendment_               4/29/81

executive officer of equivalent rank.

"(3) 'Teacher organization' means an organization, agency, committee, council, or group of any kind in which teachers participate and which exists for the purpose, in whole or in part, of conferring, discussing, and consulting with a board over the terms and conditions of professional service and other matters of mutual concern.

"(4) 'Dismissal' means an involuntary termination or interruption of the employment relationship between a teacher and the employing board during the term of the teacher's contract when such teacher is employed by contract under Section 23.28 of the Texas Education Code.

"(5) 'Nonrenewal' means a failure to reemploy a teacher after the expiration of his or her contract at the end of such contract's term.

"(6) 'Termination' means a dismissal or a nonrenewal.

"(7) 'Demotion' means an involuntary reduction of a teacher to a position of lesser rank, responsibility, or compensation or reassignment of a teacher to a position outside the scope of the teacher's teaching certificate or major or minor field of study.

"(8) 'Seniority' means length of service as a teacher in a particular school district computed from the most recent date of hire.

"Section 13.253. EVALUATION PROCEDURE. (a) Each board by resolution or directive, after availing itself of the advice of its practicing classroom teachers, shall adopt a procedure for evaluating the performance of its teachers. The board may include the procedure in a written agreement with a recognized teacher

organization. At a minimum, the procedure shall:

"(1) provide for the preparation of periodic written evaluation reports by appropriate supervisors;

"(2) afford the teacher an opportunity to review each evaluation report and submit a written response to it, which response shall be attached to the report;

"(3) include the criteria and guidelines to be used in determining whether or not to terminate a teacher's contract; and

"(4) provide for at least one evaluation during the time a teacher is employed on a probationary contract or during the term of the teacher's contract.

"(b) The procedures adopted under this section must comply with Section 13.254 of this code. The board shall provide a copy of the procedures to the Central Education Agency and to each teacher at the time of initial employment.

"Section 13.254. BASIS FOR TERMINATION OR DEMOTION. (a) A teacher may not be dismissed or demoted other than for gross immorality; conviction of any felony or other crime involving moral turpitude; repeated and continuing drunkenness, failure to comply with official directives and established board policy, or neglect of duties; physical or mental incapacity preventing performance of the contract of employment; or a pattern of conduct that relates to the ineffective performance of assigned teaching duties or to the ineffective operation of the school system. A demotion at the expiration of the teacher's contract may occur if there is a substantial and unavoidable need to require a reduction or realignment of the teaching staff.

"(b) A teacher's contract may not be nonrenewed

arbitrarily, capriciously, discriminatorily, or because of the exercise of a legally protected right.

"(c) Except as provided by Subsection (d) of this section, if one or more teachers are to be nonrenewed or demoted because of a substantial change in the size and nature of the student population or unavoidable budgetary limitations in funding existing educational programs, those teachers in the affected job categories who have the least seniority shall be nonrenewed or demoted first. For three years from the effective date of nonrenewal or demotion, a teacher nonrenewed or demoted pursuant to this subsection is entitled to be recalled to the job category that the teacher was in immediately prior to the nonrenewal or demotion. Teachers shall be recalled to available positions in each job category in reverse order to nonrenewal or demotion. During the three-year period, a board shall offer the teacher any available position for which the teacher is qualified in another job category before the position is offered to a teacher with less seniority who does not have recall rights to that job category.

"(d) A teacher may be nonrenewed, demoted, or recalled in a manner inconsistent with Subsection (c) of this section in order to implement the provisions of a board-approved or court-ordered affirmative action program designed to provide employment opportunities for women or for members of an ethnic minority group or to eliminate the effects of past discrimination against those persons.

"Section 13.255. NOTIFICATION OF DEFICIENCIES. A board may not terminate or demote a teacher unless the teacher was previously notified in writing of the specific deficiencies and given

assistance and a reasonable period of time to correct the specified deficiencies and to show adequate improvement. If the teacher fails to correct the deficiencies within the time allotted, the board shall notify the teacher in writing.

"Section 13.256. NOTICE OF TERMINATION OR DEMOTION; RIGHT TO HEARING. (a) The board, by certified mail, return receipt requested, shall send a written notice, signed by the president of the board, of its intention to dismiss a teacher employed on a term contract, nonrenew a teacher's contract, or demote a teacher. In the case of a nonrenewal, the notice shall be sent on or before April 1 of the same year in which the contract expires. The notice shall:

"(1) advise the teacher of the proposed action and the date on which it is to become effective;

"(2) contain a clear and detailed statement of the reasons for the proposed action, including the time and place of any particular incidents or acts alleged;

"(3) indicate the portion or portions of any rules of the school system alleged to have been violated;

"(4) inform the teacher of rights under this subchapter, including the right to a hearing; and

"(5) set forth the name, address, and telephone number of a representative of the board to notify if a hearing is requested.

"(b) If a teacher wishes to challenge the proposed action of the board, the teacher shall file with the board a written request for a hearing. The request must be filed not later than the 10th day after the day on which the teacher received notice.

"Section 13.257. STATUS OF TEACHER AFTER NOTICE. (a)

Except as provided by Subsection (b) of this section, if a teacher requests a hearing under Section 13.256 of this code, the board shall keep the teacher in his or her teaching assignment until the assignment ends or until the board renders a decision, whichever occurs first.

"(b) A board may remove a teacher from an assignment if the removal is necessary for the effective operation of the school system.

"(c) If a teacher does not request a hearing under Section 13.256 of this code, the board shall:

"(1) keep the teacher in his or her teaching assignment until the assignment ends or for 10 days after the last date for filing a request for a hearing, whichever occurs first; or

"(2) remove the teacher and grant pay for the time that the teacher would have worked.

"Section 13.258. HEARINGS. (a) The president of the board shall fix a mutually agreeable time and place for the hearing, which shall be not later than the 30th day after the day on which the board receives the request. If a stenographic record of the hearing is requested by one or more of the parties, the president of the board shall arrange for a stenographer to make an official transcript of the hearing.

"(b) The board shall inquire fully into the facts as they relate to the matter of the hearing.

"(c) The hearing shall be closed to the public unless the teacher requests a public hearing, and the hearing shall be confined to the reasons given in the notice for termination or demotion.

"(d) The teacher is entitled to appear at the hearing in person, by counsel, or by other representative; to call, examine, and cross-examine relevant witnesses; and to introduce into the record relevant documentary or other evidence. The president of the board shall issue a subpoena on application by either party and a showing of general relevance and reasonable scope.

"(e) Testimony may not be given or evidence introduced if it is not relevant or material to the allegations set forth in the notice or if it is based on procedures not in compliance with Sections 13.253 through 13.255 of this code.

"(f) Evidence detrimental to a teacher's conduct, service, character, or personality may not be introduced as a basis for termination or demotion unless the evidence was called to the attention of the teacher promptly after the board knew or reasonably should have known of its existence and unless the teacher was given an opportunity to respond to or rebut it.

"(g) The teacher or the teacher's representative is entitled, on request, to a reasonable period for oral argument prior to the close of the hearing.

"(h) The teacher or the teacher's representative is entitled, on request made before the conclusion of the hearing, to file a written brief. The board shall fix a reasonable time for that filing not later than the 20th day after the last day of the hearing unless otherwise agreed to by the parties.

"(i) The board shall promptly render a decision. Unless otherwise agreed by the parties, the board shall render the decision not later than the 30th day after the last day of the hearing or, if an oral hearing has been waived, after the date of